UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| JIMMY RICHMOND<br><br>       Petitioner,<br><br> v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security<br>Administration,<br><br>       Respondent. | Case No. 1:19-CV-00177-CWD<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Currently pending before the Court for its consideration is Jimmy Richmond's

Petition for Review of the Respondent's denial of social security benefits, filed on May

15, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the

parties' memoranda, and the administrative record (AR), and for the reasons that follow,

will affirm the decision of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul will be substituted as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, on September 1, 2016, claiming disability beginning March 24, 2015. The applications were denied initially and on reconsideration, and a hearing was conducted on March 14, 2018, before Administrative Law Judge (ALJ) Russell Wolff. After considering testimony from Petitioner and a vocational expert, ALJ Wolff issued a decision on May 29, 2018, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on April 16, 2019.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty-three years of age. Petitioner completed high school and one semester of college. Petitioner's prior work experience includes work as an electronics technician, computer technician, and cybersecurity technician.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of March 24, 2015. At step two, it must be determined whether the claimant suffers

**MEMORANDUM DECISION AND ORDER - 2**

from a severe impairment. The ALJ found Petitioner's hearing loss, anxiety, depressive disorder, post-traumatic stress disorder, and diabetes mellitus severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments. The ALJ specifically considered whether the severity of Petitioner's physical or mental impairments, considered singly and in combination, met or medically equaled the criteria of Listing 2.10 (Hearing loss not treated with cochlear implantation); 12.04 (Depressive, bipolar and related disorders); and 12.06 (Anxiety and obsessive-compulsive disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and next determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms he alleged, but that his statements about the intensity, persistence, and limiting effects of his conditions were not entirely consistent with the medical evidence and other evidence of record. (AR 21.) As part of his evaluation of Petitioner's RFC, the ALJ found Petitioner less than fully credible; discounted the lay witness's testimony; and discounted the opinion of examining psychologist Brad Levitt, Psy.D.

The ALJ found Petitioner was not able to perform his past relevant work. If a

**MEMORANDUM DECISION AND ORDER - 3**

claimant demonstrates an inability to perform past relevant work, the burden shifts to the

Commissioner to demonstrate, at step five, that the claimant retains the capacity to make

an adjustment to other work that exists in significant levels in the national economy, after

considering the claimant's residual functional capacity, age, education and work

experience. The ALJ determined Petitioner retained the RFC to perform light work as

defined in 20 C.F.R. § 404.1567(b), but had the following limitations:

> The claimant can never climb ladders, ropes or scaffolds and can only frequently climb ramps and stairs. The claimant is limited to moderate noise in the work environment. He can frequently balance, stoop, kneel, crouch, or crawl. He can have no meaningful exposure to odors, dust, fumes or pulmonary irritants. He can never be exposed to extreme cold or heat. The claimant is limited to perform simple, routine or repetitive tasks. He can make simple work-related decisions and follow simple work-related instructions. He is limited to occasional interaction with co-workers and no meaningful interaction with the public.

(AR 21.)

Relying upon the testimony and opinions elicited from the vocational expert who

testified at the hearing, the ALJ found at step five that Petitioner retained the RFC to

perform the requirements of representative occupations such as fruit cutter, photocopy

machine operator, and collator operator. (AR 27.) Consequently, the ALJ determined

Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because

of the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

**MEMORANDUM DECISION AND ORDER - 5**

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

The following five issues are raised upon appeal:

1.   Did the administrative law judge (ALJ) reasonably conclude that the record was sufficiently developed with regard to Petitioner's hearing loss?

2.   Did the ALJ reasonably evaluate Petitioner's subjective complaints and credibility?

3.   Did the ALJ reasonably evaluate the lay witness testimony and is any alleged error harmless?

4.   Did the ALJ reasonably evaluate the opinions of examining psychologist Brad Levitt, Psy.D., and State agency psychological consultant Martin Seidenfeld, Ph.D.?

5.   Did the ALJ reasonably assess Petitioner's residual functional capacity (RFC)?

Each of these issues on appeal will be discussed in turn below.

**MEMORANDUM DECISION AND ORDER - 6**

1.      **Development of the Record**

Petitioner argues the ALJ failed to obtain necessary information, such as through ordering a consultative examination, to clarify the severity and duration of Petitioner's hearing loss to adequately consider the criteria of Listing 2.10 at step three, and improperly evaluated Petitioner's hearing loss at step five. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1151 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). But an ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). The Court finds the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence, as explained below.

The record contained evidence that Petitioner suffered from hearing loss. On August 4, 2016, treatment records establish "some hearing loss," described as problems with "background [and] secondary noise." (AR 431.) During the hearing before the ALJ, Petitioner explained that, when there is "a lot of noise going on, a lot of activity especially multiple conversations at once, it becomes muddled and I really lose…it's almost impossible to focus on even a conversation I'm having at this distance." (AR 58.)

On February 14, 2018, Petitioner was given a hearing evaluation. (AR 511.) Test results revealed "Sensorineural Sloping hearing loss, mild to moderate results. In an

office setting [Petitioner] was able to repeat 48% of a list of words. With binaural

amplification his word score increased to 95%, a significant improvement. Due to

financial hardship patient was unable to pursue hearing aids at this time." (AR 511.)

At step three, the ALJ considered whether Petitioner met the criteria of Listing

2.10 (hearing loss not treated with cochlear implantation), which requires evidence of

either:

> A. An average air conduction hearing threshold of 90
> decibels or greater in the better ear and an average bone
> conduction hearing threshold of 60 decibels or greater in the
> better ear (*see* 2.00B2c).
> OR
> B. A word recognition score of 40 percent or less in
> the better ear determined using a standardized list of
> phonetically balanced monosyllabic words (*see* 2.00B2e).

Section 2.00B2e explains that word recognition testing "determines your ability to

recognize a standardized list of phonetically balanced monosyllabic words in the absence

of any visual cues." The ALJ determined the medical evidence of record did not contain

these specific findings in the testing records and concluded the criteria of Listing 2.10

were not met. (AR 18-19.) At step four, the ALJ accounted for Petitioner's hearing loss

by limiting him to "moderate noise [exposure] in the work environment." (AR 21.) At

step five, the ALJ determined Petitioner could perform the work of representative

occupations such as collator operator, fruit cutter, and photocopy machine operator.

Upon review of the record as a whole, the Court finds the ALJ thoroughly

discussed the medical evidence in the record and properly considered Petitioner's

allegation of hearing loss at step three. The ALJ's determination that Petitioner's hearing loss did not meet or equal a listed impairment was supported by substantial evidence in the record as a whole, and the ALJ's duty to develop the record further was not triggered. The evidence was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (rejecting claimant's argument that ALJ had obligation to procure proof of her herniated disc disease). The ALJ specifically discussed evidence of Petitioner's hearing loss, and concluded the record was sufficient to render an informed decision. *Tushner v. Astrue*, No. 1:11-CV-00600-CL, 2012 WL 1481493, at *13 (D. Or. Apr. 27, 2012) (finding ALJ did not err in failing to fully and fairly develop the record by declining to schedule a neuropsychological consultative examination).[2]

Petitioner next argues that the ALJ's conclusion at steps four and five that Petitioner could perform the jobs of collator operator and fruit cutter was in error, because it conflicts with the ALJ's RFC assessment limiting Petitioner to moderate noise exposure. The vocational expert testified these jobs would subject Petitioner to moderate noise. (AR 76.) Petitioner argues his hearing loss would place him at a disadvantage in these two jobs because moderate background noise would mask verbal communication,

---

[2] *See also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (finding ALJ did not have a duty to develop the record at step three when he thoroughly discussed the medical evidence in the record and considered Petitioner's allegations of impairments); 20 C.F.R. § 404.1512(a) ("[Y]ou have to prove to us that you are blind or disabled...This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and... its effect on your ability to work on a sustained basis.").

**MEMORANDUM DECISION AND ORDER - 9**

such as safety warnings, and therefore preclude him from performing these particular jobs.

However, it is not for the Court to substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). The Court cannot reweigh the evidence and second-guess the ALJ's determination that Petitioner could perform the jobs of collator operator and fruit cutter with an RFC limiting him to moderate noise exposure. Finally, even assuming the jobs of collator operator and fruit cutter would be precluded due to Petitioner's limitation to no more than moderate noise exposure, Petitioner does not challenge the ALJ's conclusion that Petitioner could perform the job of photocopy machine operator. When asked about noise levels for each of the three jobs, the vocational expert did not testify that the job of photocopy machine operator would subject Petitioner to moderate noise levels. The ALJ's conclusion Petitioner is not disabled would therefore stand.

The Court finds the ALJ did not err in failing to develop the record more fully by obtaining a consultative or other examination related to Petitioner's hearing loss.

**2.   Symptom Testimony**

The ALJ engages in a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Trevizo v.*

**MEMORANDUM DECISION AND ORDER - 10**

*Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); 20 C.F.R. § 404.1529 (Mar. 27, 2017)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ may discredit the claimant's testimony about the severity of his or her symptoms only by offering specific, clear and convincing reasons for doing so. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). It is "not sufficient for the ALJ to make only general findings; he [or she] must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). These reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 345, at 345-46 (9th Cir. 1991)).

When evaluating the intensity and persistence of symptoms, the ALJ must consider all of the evidence in the record. *See* SSR 16-3p (March 16, 2016), 2016 WL

1119029 at *1-2.[3] The ALJ is directed to examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. at *4.

The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision may be upheld even if not all of the ALJ's reasons for discrediting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Security Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, make an

---

[3] The Commissioner superseded SSR 96-7p governing the assessment of a claimant's "credibility" with SSR 16-3p, which eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to evaluate the record as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.5 (9th Cir. 2017).

**MEMORANDUM DECISION AND ORDER - 12**

adverse finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, an ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain" or other symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). But the ALJ may not reject subjective pain or other symptom testimony merely because it was not fully corroborated by objective medical evidence. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Petitioner's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the evidence. (AR 22.) Specifically, the ALJ found that the medical records do not substantiate Petitioner's subjective allegations of limitations causing total disability. (AR 22.) The ALJ then summarized the medical records supporting his conclusion. Petitioner argues that the ALJ's analysis is erroneous, because the ALJ provided no explanation as to why the medical records he cited undermine Petitioner's testimony about his symptoms, citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Petitioner specifically targeted the ALJ's discussion of Petitioner's hearing loss, mental health treatment, and breathing problems from allergies or asthma.

The court in *Brown-Hunter* explained that "[a] finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the

**MEMORANDUM DECISION AND ORDER - 13**

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citing *Bunnell*, 947 F.2d at 345–46). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted). *See also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

Here, the Court's review of the ALJ's written decision and the record as a whole reveal that the ALJ identified inconsistencies between Petitioner's statements concerning his disabling conditions and the medical record evidence. For instance, with respect to Petitioner's hearing loss, the ALJ noted the records describe hearing loss but reveal a lack of testing or treatment, and that Petitioner's subjective complaints of interference from background noise were adequately accounted for by an RFC limiting him to moderate noise in the work environment. (AR 22.)

Turning to Petitioner's anxiety and depression, the ALJ referenced several instances when Petitioner reported to his treatment providers that his symptoms were moderate, and improved with medication. The ALJ noted also that, in 2017, Petitioner self- reported he was not experiencing depression, feelings of hopelessness, or loss of pleasure from usual activities. (AR 22.) The ALJ cited also to records from 2017 indicating that Petitioner was taking Cymbalta, which provided a good benefit. (AR 24.)

**MEMORANDUM DECISION AND ORDER - 14**

When conditions are controlled by medication, such evidence undermines Petitioner's claims that his anxiety and depression were so severe as to be disabling. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). Finally, the ALJ noted in 2018, despite Petitioner reporting feelings of hopelessness and loss of pleasure, his treatment provider noted Petitioner had an euthymic mood.[4] (AR 24.) The ALJ accounted for the mild to moderate symptoms reflected by the medical record by an RFC limiting Petitioner to simple tasks, decisions, and instructions with only occasional interaction with coworkers. (AR 23.)

Last, concerning Petitioner's asthma, the ALJ noted Petitioner's symptoms improved with medication, and that he sought limited treatment for those symptoms. Responsiveness to conservative treatment undermines Petitioner's reports regarding the disabling nature of his symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008).

Based on the above, the Court finds the ALJ's reasons for discounting Petitioner's testimony are supported by substantial evidence in the record. Accordingly, the Court will not disturb the ALJ's adverse credibility finding.

### 3.    Lay Witness Testimony

An ALJ must consider evidence from sources other than the claimant, including family members and friends, to show the severity of a claimant's impairment. 20 C.F.R. §

---

[4] Euthymia is defined as "joyfulness; mental peace and tranquility," or "moderation of mood, not manic or depressed." 307600 euthymia, STEDMANS MEDICAL DICTIONARY 307600.

**MEMORANDUM DECISION AND ORDER - 15**

404.1513(d)(4); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006). Lay testimony regarding a claimant's symptoms constitutes competent evidence that an ALJ must consider, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted)); *Regennitter v.Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999). Such reasons include conflicting medical evidence, prior inconsistent statements, or a claimant's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

When rejecting lay testimony, "the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial evidence supports the ALJ's decision." *Holzberg v. Astrue*, No. C09-5029BHS, 2010 WL 128391 at *11 (W.D. Wash. Jan. 11, 2010) (citing *Lewis*, 236 F.3d at 512). However, "where the ALJ's error lies in failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin*., 454 F3d 1050, 1056 (9th Cir. 2006).

Petitioner's mother and stepfather, Carol and Dean Hill, provided statements concerning Petitioner's activities and limitations. Carol Hill completed a function report on January 28, 2017, explaining Petitioner could perform activities of daily living, but

**MEMORANDUM DECISION AND ORDER - 16**

sometimes had to be reminded to bathe, and that he no longer socialized due to anxiety. (AR 289 – 297.) She provided a more descriptive narrative concerning the effects of Petitioner's depression and anxiety, stating that Petitioner "needs to go off by himself" when around too many people; has "coughing spells;" and suffers pain due to back injuries. (AR 337.)

Dean Hill provided a narrative as well, explaining Petitioner suffers from asthma resulting in shortness of breath, coughing and gagging, and that strenuous activity exacerbates his asthma. (AR 336.) Mr. Hill described also that Petitioner's mental health conditions cause Petitioner to suffer from nightmares, and that Petitioner has a "hard time being around people." (AR 336.) In addition, Mr. Hill commented that Petitioner sleeps "a lot," and he suffers from "the shakes." (AR 336.)

The ALJ considered the third party statements of Petitioner's family members and gave them "some weight because they have first-hand and long-term familiarity" with Petitioner. (AR 22.) The ALJ explained that the reports are consistent and corroborate Petitioner's allegations. However, in giving them only some weight, the ALJ explained that the statements do not provide objective medical evidence or any expert perspective. A review of the RFC indicates the ALJ credited the lay witness testimony by restricting Petitioner to light work, with no exposure to pulmonary irritants, and limited him to simple, routine tasks with minimal interaction with co-workers and no meaningful interaction with the public.

Petitioner argues the ALJ erred by giving only "some weight" to the lay witness

**MEMORANDUM DECISION AND ORDER - 17**

statements without providing germane reasons for doing so. Petitioner contends the opinions are "valuable descriptions of Petitioner's behavior" because they describe Petitioner's condition. The Court finds Petitioner's argument without merit here. The ALJ considered and evaluated the lay witness testimony in the record. He credited their observations of Petitioner's behavior, and incorporated the described limitations into Petitioner's RFC, but declined to recognize their characterizations regarding the cause of the symptoms. In other words, the ALJ did not completely disregard the lay witness testimony.

To the extent that the ALJ provided a poor description of the weight he gave to the lay witness statements, such error is harmless. Legal error is harmless where it is clear such errors would not alter the ALJ's decision. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). Here, Petitioner has not explained how crediting the lay witness testimony fully would alter the outcome of the case, considering the ALJ accounted for Petitioner's limited ability to interact with others, as well as his pulmonary symptoms and physical limitations, in the RFC and his determination of whether Petitioner is disabled.

The Court finds the ALJ addressed the limitations described by the lay witnesses. Therefore, the Court concludes any error in failing to more fully explain the reason for assigning "some weight" is harmless.

**4.    Physician Testimony**

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v.*

*Comm'r of Soc. Sec.*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2P, 1996 WL 374188, at *1 (S.S.A. July 2, 1996) (stating that a well-supported opinion by a treating source which is not inconsistent with other substantial evidence in the case record "must be given controlling weight; i.e. it must be adopted.").[5] In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted); *see also* SSR 96-2P, 1996 WL 374188 at *5 ("[T]he notice of the determination or decision must contain specific reasons for the weight given to the [physician's] medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

---

[5] In light of new rules effective March 27, 2017, the Commissioner rescinded SSR 96-2P. *See* Notice regarding Rescission of Social Security Rulings 96-2P, 96-5P, and 06-3P, 2017 WL 3928298 (March 27, 2017). However, SSR 96-2P applied at the time of ALJ's decision and discusses the regulations governing claims, like Petitioner's, that were filed before March 27, 2017.

**MEMORANDUM DECISION AND ORDER - 19**

adjudicator gave to the treating source's medical opinion and the reasons for that weight."). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Should the ALJ decide not to give a treating or examining physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

The ALJ evaluated the opinion of Brad Levitt, Psy.D., who examined Petitioner on November 9, 2016. (AR 403.) Dr. Levitt interviewed Petitioner and conducted a behavioral evaluation and mental status examination. Dr. Levitt opined the mental status examination was consistent with Petitioner being anxious and depressed. He then explained Petitioner's depressed mood and anxiety would be likely to contribute to low levels of job performance and increased levels of absenteeism. In Dr. Levitt's opinion, Petitioner's mental health presentation would "likely…chronically hinder his ability to engage in most job activities on a consistent basis. Given the right situation with appropriate accommodations, [Petitioner] might be capable of maintaining employment….His level of concentration appeared moderately impaired, at least some of the time. [Petitioner] also appeared moderately distractible." (AR 407.) Dr. Levitt went

on to say that Petitioner has "more profound problems with social functioning," and an "average level of intelligence." (AR 407.)

Dr. Seidenfeld performed a review of the record on reconsideration on February 8, 2017. (AR 137.) He documented that the record revealed Petitioner has some limitations with social interaction and the ability to respond appropriately in a workplace setting. However, in his opinion, the medical evidence supported a finding that Petitioner retained the ability to perform at least entry level, unskilled mental work activities. (AR 136, 143.)

The ALJ gave Dr. Levitt's opinion "little weight," whereas he gave Dr. Seidenfeld's opinion "considerable weight." (AR 23, 25.) He explained Dr. Seidenfeld was familiar with the claimant's medical records available at the time, and that his assessment is consistent with the longitudinal treatment history because no recent evidence demonstrated worsening of depression and anxiety problems. (AR 25.) In contrast, the ALJ explained Dr. Levitt examined Petitioner only one time, and his assessment was "not fully in accord with the other mental health examinations by treatment providers, which describe more moderate or mild problems." (AR 25.) The ALJ discussed also that Dr. Levitt's opinion lacked meaningful specificity and invaded the province of the Commissioner. Last, the ALJ credited Dr. Levitt's observations that Petitioner would be capable of performing simple tasks, making simple decisions and following basic instructions, with only occasional interaction with coworkers, which he incorporated in the RFC. (AR 23.)

Petitioner first faults the ALJ with failing to explain how Dr. Levitt's opinion was

**MEMORANDUM DECISION AND ORDER - 21**

inconsistent with the other medical evidence of record, citing extensively to the medical records of Dr. Kenneth Carrell, Petitioner's primary care physician. Petitioner argues the ALJ did not explain what evidence existed in the record to contradict Dr. Levitt's opinion. *See Jones v. Astrue,* 503 F. App'x 516, 517 (9th Cir. 2012) (finding error where an ALJ rejected a treating physician's report because it was not clear what specifically made the record insufficient to support the opinion).

However, here the ALJ discussed extensively the notations in the medical records from Petitioner's treating providers, explaining that they described Petitioner's symptoms as moderate, and improved with medication. (AR 22, 24.) The ALJ discussed also that Petitioner reported in 2017 his mood had improved. (AR 22, 24.) The ALJ noted that, in contrast with Petitioner's self-report in January of 2018 of feelings of hopelessness and loss of pleasure, his treating provider recorded that Petitioner had a euthymic mood. (AR 24.) The ALJ pointed out that Petitioner did not require psychiatric hospitalizations, and the treatment history demonstrated medications were helpful to control symptoms. The ALJ therefore provided a legally adequate discussion in support of his conclusion that Dr. Levitt's opinions are inconsistent with the treatment records of Petitioner's primary care providers and Petitioner's own reports to them.

Second, Petitioner argues the ALJ failed to provide a legally sufficient analysis of Dr. Levitt's opinion that Petitioner would suffer low levels of job performance and increased levels of absenteeism. Petitioner faults the ALJ's assessment that Dr. Levitt's opinion lacked specificity, asserting the potential for off task behavior and absenteeism

**MEMORANDUM DECISION AND ORDER - 22**

was raised with the vocational expert during the hearing, and had Dr. Levitt's opinions been properly evaluated and credited, Petitioner would be precluded from all work. (AR 73-74.)

The Court finds the ALJ's reasoning here to be sufficiently supported by evidence in the record. Dr. Levitt did not quantify in any meaningful way the potential for interruption in concentration and pace from mental health symptoms. Instead, Dr. Levitt interjected qualifiers, such as "moderately distractible," without providing an opinion concerning whether Petitioner could complete a normal workday without interruptions from psychologically-based symptoms. Dr. Levitt failed also to quantify the level of absenteeism. The ALJ cited these deficiencies in his written determination. The ALJ is responsible for resolving ambiguities present in the record, and it is not for the Court to second guess the ALJ. When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Third, Petitioner argues the ALJ did not address Dr. Levitt's opinion that, "[g]iven the right situation with appropriate accommodations, [Petitioner] might be capable of maintaining employment, but under most circumstances, probably not." Petitioner asserts Dr. Levitt's opinion is not conclusory, citing *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012), as support. In *Hill,* the court was confronted with a physician's statement that the petitioner "would be unlikely to work full time." 698 F.3d at 1160. The court found the ALJ's failure to address the physician's opinion at all to be error. *Id.* Further, the court

found that the statement was not conclusory, because it was an assessment based on objective medical evidence of the petitioner's likelihood of being able to sustain full time employment. *Id.*

Here, in contrast, the ALJ discussed Dr. Levitt's opinions, including the statement quoted above. The ALJ rejected Dr. Levitt's assessment not only because it was riddled with qualifiers that failed to provide the ALJ with any "meaningful specificity," but also because the doctor's opinions were at odds with the other mental health examinations of Petitioner by his treating providers over time. Further, the ALJ concluded that Dr. Levitt's opinion supported a finding that Petitioner, despite his limitations, would not be precluded from work involving simple tasks with occasional interaction with others. (AR 23.) The Court therefore finds *Hill* distinguishable, and that it does not support reversal of the ALJ's decision in this case.

The Court therefore finds the ALJ properly considered Dr. Levitt's opinion, and provided specific and legitimate reasons supported by substantial evidence in the record for giving it little weight.

5.    **Petitioner's RFC**

A claimant's residual functional capacity is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ must consider all relevant evidence in the record when determining a claimant's RFC. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his

**MEMORANDUM DECISION AND ORDER - 24**

hypothetical question to the vocational expert but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Petitioner argues the ALJ provided an incomplete RFC determination because of the failure to develop the record regarding Petitioner's hearing loss, and the disregard of Dr. Levitt's opinion. Petitioner argues the evidence supports a finding that Petitioner would be off-task, unable to tolerate a noisy environment, and absent to a degree that all work is precluded. The ALJ explored these limitations with the vocational expert at the hearing. But, the ALJ ultimately decided the record did not support a finding that Petitioner would be off-task more than ten percent each workday, or would miss more than two days of work each month, and that he could tolerate moderate noise. (AR 73 – 76.)

When the evidence before the ALJ is subject to more than one rational interpretation, the Court must defer to the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). Based upon the Court's findings above, and upon its review of the record as a whole, the Court concludes substantial evidence supports the ALJ's RFC determination and the ALJ did not commit legal error.

**MEMORANDUM DECISION AND ORDER - 25**

## CONCLUSION

When considering the record as a whole, the Court finds the ALJ's duty to develop the record was not triggered, and that he considered and appropriately weighed the evidence in the record, including the opinions of Dr. Levitt. Accordingly, the Court finds that substantial evidence supports the ALJ's RFC finding. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The ALJ discussed the objective medical evidence, opinion evidence, and Petitioner's statements; appropriately weighed the evidence; and set forth the basis for the RFC determination which is supported by substantial evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). For these reasons, the ALJ's decision will be affirmed and the petition will be dismissed.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby **ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

DATED: May 26, 2020

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 26**